IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:12-HC-2009-BO

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>Petitioner, )<br>)<br>v. )<br>)<br>FREDERICK SPRINGER, )<br>Respondent. ) | FINDINGS OF FACT<br>AND CONCLUSIONS OF LAW |

Petitioner (the government) instituted this civil action pursuant to Title 18 of the United States Code, Section 4248(a), seeking to commit respondent Frederick Springer (respondent or Mr. Springer) as a "sexually dangerous person" pursuant to the Adam Walsh Child Protection and Safety Act of 2006 (Adam Walsh Act or the Act). The government filed a certificate stating that mental health personnel for the Federal Bureau of Prisons (BOP) examined respondent and issued a preliminary determination that he is sexually dangerous within the meaning of the Act [DE 1]. Such certificate stayed respondent's release from federal custody pending a hearing to determine whether respondent qualifies for commitment as a sexually dangerous person. The government's petition was filed on January 9, 2012; respondent was scheduled to be released June 30, 2012.

On August 14, 2012, the Court conducted an evidentiary hearing in this matter pursuant to 18 U.S.C. § 4247(d). The parties filed proposed findings of fact and conclusions of law on August 28 and 29, 2012. Pursuant to Rule 52(a)(1) of the Federal Rules of Civil Procedure, and after due consideration of the evidence presented and argument of counsel, the Court *adopts*

respondent's findings of fact and conclusions of law, as filed on August 29, 2012 [DE 33], and incorporates those findings as conclusions as if they were fully set forth herein. The Court now holds that the government has failed to satisfy its burden to show by clear and convincing evidence that respondent is sexually dangerous to others as defined by the Adam Walsh Act.

## DISCUSSION

To order the commitment of a respondent pursuant to § 4248, a court must conclude, after an evidentiary hearing at which the government bears the burden of proof by clear and convincing evidence, that the respondent is a "sexually dangerous person" as defined by the Act. The government must show that (1) the respondent "has engaged in or attempted to engage in sexually violent conduct or child molestation" and (2) that the respondent "suffers from a serious mental illness, abnormality, or disorder as a result of which he would have serious difficulty in refraining from sexually violent conduct or child molestation if released." 18 U.S.C. § 4248(d).

"[C]lear and convincing has been defined as evidence of such weight that it produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established, and, as well, as evidence that proves the facts at issue to be highly probable." *Jimenez v. DaimlerChrysler Corp.*, 269 F.3d 439, 450 (4th Cir. 2001) (quotation marks, citations, and alterations omitted); *see also Addington v. Texas*, 441 U.S. 418, 423-24 (1979) (noting that the "clear and convincing" standard of proof is an "intermediate standard" that falls between a "mere preponderance of the evidence" and "beyond a reasonable doubt"). If the court finds that the government has satisfied its burden, the individual must be committed to a suitable facility for mental treatment until he is determined to no longer be sexually dangerous to others. 18 U.S.C. § 4248(d).

2

### 1. *Whether respondent has engaged or attempted to engage in sexually violent conduct or child molestation*

The Court finds that the government has established by clear and convincing evidence that Mr. Springer has engaged or attempted to engage in sexually violent conduct or child molestation in the past. Mr. Springer does not contest such a finding.

### 2. *Whether respondent currently suffers from a serious mental illness, abnormality, or disorder*

The government's two testifying experts in this matter, Drs. Graney and Hastings, opined that Mr. Springer suffers from pedophilia, non-exclusive type and that this qualifies as a serious mental disorder as required by the Act. Pet'r Ex. 6 at 15; Pet'r Ex. 3 at 38. Dr. Graney also diagnosed Mr. Springer with personality disorder not otherwise specified (NOS) with borderline and antisocial features and Dr. Hastings diagnosed Mr. Springer with borderline personality disorder with antisocial features. *Id.* Dr. Plaud, testifying for Mr. Springer, opined that there is insufficient evidence to support a diagnosis of pedophilia, and that Mr. Springer currently suffers from no serious mental disorder. Resp't Ex. 2 at 2.

According to the American Psychiatric Association's *Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision* ("DSM-IV-TR"), pedophilia involves recurrent, intense, sexual urges, fantasies, or behaviors involving pre-pubescent minors, generally age thirteen or younger. DSM-IV-TR at 571-72. Although both of the government's experts diagnosed Mr. Springer with pedophilia, the Court credits the testimony of Dr. Plaud in regard to the applicability of this diagnosis.

Though the DSM-IV-TR notes that pedophilia tends to be lifelong or chronic, DSM-IV-

3

TR at 571, neither Dr. Hastings nor Dr. Graney point to any *current* evidence of Mr. Springer having recurrent or intense fantasies or urges regarding pre-pubescent minors. Both of their reports rely on Mr. Springer's historic offenses, the earliest of which was committed when Mr. Springer was nineteen and each of which was committed when Mr. Springer was between six and nine years older than his victims. Pet'r Ex. 6 at 15. The diagnostic criteria for pedophilia require that the offender must be at least sixteen years of age and that there be a minimum of a five year difference in age between the victim and the offender. DMS-IV-TR at 571.

Dr. Plaud opined that the repeated sexual abuse that Mr. Springer suffered at the hands of his step-father beginning at an early age resulted in Mr. Springer's failed understanding of appropriate sexual relationships. Specifically, Dr. Plaud noted that "Mr. Springer's sexual offense history is best understood as occurring within the context of his own developmental delay in coming to grips with his own sexuality, largely a by-product . . . of his own sexual abuse suffered at the hands of his step-father over a significant period of time." Resp't Ex. 2 at 2. There is no evidence that Mr. Springer has offended against a pre-pubescent minor since 2000, and Mr. Springer's most recent contact offense, which occurred in 2004, involved a post-pubescent sixteen-year-old minor. Pet'r Ex. 3 at 19; Resp't Ex. 2 at 7.

Further, while there is evidence in the record that Mr. Springer has engaged in sexual acts while incarcerated, in violation of BOP policy, the Court heard no evidence that Mr. Springer has been found to have produced or possessed child pornography or writings that depict sexual acts against children while incarcerated. The Court also finds credible Mr. Springer's own testimony that he is not sexually attracted to pre-pubescent minors. Committing pedophilic acts and meeting the criteria for a diagnosis of pedophilia are not necessarily coincident, and absent

further evidence that Mr. Springer currently demonstrates recurrent, intense, sexually arousing fantasies, urges, or behaviors involving pre-pubescent minors, the Court finds more convincing Dr. Plaud's opinion that Mr. Springer does not currently suffer from pedophilia, or any other sexual disorder.[1] Resp't Ex. 2 at 2; *see United States v. Wooden*, No. 11-7226 (4th Cir. September 6, 2012) (finding that a record that contains "*substantial evidence* showing that [respondent] *was still having* intense and recurrent sexually arousing fantasies and sexual urges about prepubescent children," including admissions made to a psychologist, during a polygraph examination, and during a deposition, in addition to hearing testimony that evinced common sex offender cognitive distortions, supported a finding that respondent still suffers from a serious mental disorder of pedophilia) (emphasis added).

Nor do the personality disorder diagnoses applied by Drs. Graney and Hastings amount to serious mental disorders in this context. Dr. Graney opined that Mr. Springer's personality disorder diagnosis is serious in that it is a significant contributing factor to the primary contributing factor of pedophilia in regard to his sex offenses against children, pointing to the poor problem-solving and general impulsivity components of the personality disorder diagnosis. Pet'r Ex. 6 at 20. In other words, Drs. Graney and Hastings' opinions appear to suggest that Mr. Springer's borderline and or antisocial personality traits exacerbate or diminish Mr. Springer's ability to control his underlying paraphilic impulses.

In this instance, where the Court has credited the conclusion that Mr. Springer does not

---

[1] The Court notes that Mr. Springer testified that he believes he suffers from hebephilia and is sexually attracted to sixteen to twenty-five year old males. As none of the testifying experts in this matter have applied such a diagnosis to Mr. Springer, however, the Court declines to consider whether hebephilia, even if appropriate and applicable in this matter, constitutes a serious mental disorder for purposes of the Adam Walsh Act.

currently suffer from pedophilia, or any other underlying paraphilia, it cannot find that Mr. Springer's personality disorder diagnoses are sufficient bases, standing alone, on which to predicate civil commitment. Therefore, it credits the testimony of Dr. Plaud who testified that, while a personality disorder such as borderline personality disorder may contribute to a serious mental disorder, alone it would not generally constitute a serious mental disorder as contemplated by the Act. Finally, while there is indeed evidence in the record to support a finding that Mr. Springer currently suffers from mental health problems and would certainly benefit from further mental health treatment, the government has failed show that Mr. Springer's other mental health issues are sufficiently related to his sex offense behaviors and would thus constitute serious mental disorders for the purposes of the Adam Walsh Act.

Because the government's evidence has failed to instill in the Court a "firm belief or conviction, without hesitancy" that Mr. Springer currently suffers from a serious mental disorder, the Court finds that the government has failed to satisfy its burden as to this step of the inquiry. *United States v. Hall*, 664 F.3d 456, 461 (4th Cir. 2012). The government's failure to prove the mental disorder element necessitates a finding that Mr. Springer is not sexually dangerous. *United States v. Francis*, 686 F.3d 265, 276 (4th Cir. 2012) (citation omitted).

### *3. Whether, as a result of the illness, abnormality, or disorder, respondent would have serious difficulty in refraining from sexually violent conduct or child molestation if released*

However, even if the Court were to credit the opinions of the government's experts and find that Mr. Springer currently suffers from a serious mental disorder, namely pedophilia, the government has failed to show that, as a result of such disorder, Mr. Springer would have serious difficulty in refraining from sexually violent conduct or child molestation if released. As noted

6

by the Fourth Circuit in *United States v. Hall*,

> [t]he 'serious difficulty' prong of § 4248's certification proceeding refers to the degree of the person's "volitional impairment," which impacts the person's ability to refrain from acting upon his deviant sexual interests. *Kansas v. Hendricks*, 521 U.S. 346, 358 (1997) (noting that statutory requirements that couple proof of dangerousness with proof of a mental illness or abnormality "serve to limit involuntary civil confinement to those who suffer from a volitional impairment rendering them dangerous beyond their control"); *id.* at 357 (noting that civil commitment statutes may "provide[] for the forcible civil detainment of people who are unable to control their behavior and who thereby pose a danger to the public health and safety...provided the confinement takes place pursuant to proper procedures and evidentiary standards") (internal citations omitted); *see also Kansas v. Crane*, 534 U.S. 407, 414 (2002) (noting that "our cases suggest that civil commitment of dangerous sexual offenders will normally involve individuals who find it particularly difficult to control their behavior.")

664 F.3d 456, 463 (4th Cir. 2012).

Each of the testifying experts relied, to a greater or lesser degree, on actuarial instruments and a consideration of dynamic risk factors in determining the degree of Mr. Springer's volitional impairment and whether he would have serious difficulty refraining from sexually violent conduct or child molestation if released. Pet'r Ex. 3 at 25-33; Pet'r Ex. 6 at 16-20; Resp't Ex. 2 at 12-15. The Court has considered the results of these assessments and the testimony regarding the application of these assessments by each expert. After considering such testimony and the experts' reports, the Court finds more credible the opinion of Dr. Plaud with regard to this step of the inquiry.

Mr. Springer spent an aggregate of approximately four years in the community without committing or being investigated or charged as having committed a contact sex offense; indeed, the index offense for which Mr. Springer was serving a custodial sentence at the time he was certified was for failing to register as a sex offender. The Court finds credible Mr. Springer's own testimony that he knows his actions were wrong and that he needs help, and the Court

7

further credits Dr. Plaud's testimony that Mr. Springer's confession of the struggles he may face upon release is a sign of self-awareness and health. The Court recognizes that Mr. Springer testified upon examination by the government that he believes that he is sexually dangerous, to a point. However, the Court is satisfied that this statement was clarified following questions by respondent's counsel, in response to which Mr. Springer conveyed that he understands that if he were to return to a chaotic, unstable lifestyle that includes drug abuse and a lack of mental health treatment, he may re-offend. Mr. Springer's deposition transcript also supports the Court's finding. In his deposition, Mr. Springer stated that he is sexually dangerous, because he knows what he did was wrong and because he hurt young children. Pet'r Ex. 28 at 40. He further stated that he is not going to have serious difficulty refraining because he has matured, because his earlier offenses were linked to his own abuse, and because he has already been able to exist in the community without re-offending. *Id.*

The Court has also considered Dr. Graney's testimony that in his past Mr. Springer repeatedly aligned himself with adults who permitted his access to minors, and that this contributes to her finding the Mr. Springer would have serious difficulty refraining if released. Pet'r Ex. 6 at 18. Again, the Court notes the time that has elapsed since this behavior occurred and the age of Mr. Springer at the time of these offenses. Further, the Court finds credible Mr. Springer's statements that he plans to refrain from contact with minors, even his nieces and nephews, Pet'r Ex. 28 at 106, and finds that, on the whole, Dr. Plaud's conclusion that Mr. Springer is "not at this time the young man who committed sexual offenses" is convincing. Resp't Ex. 2 at 2. In light of the foregoing, the Court is not satisfied that the government has shown, by clear and convincing evidence, that Mr. Springer will have *serious difficulty* refraining

8

from sexually violent conduct or child molestation if released.

Furthermore, Mr. Springer will be subject to a supervised release term of life upon his release. Mr. Springer will be required to participate in mental health treatment, sex offender treatment, and random polygraph testing, as well as being prohibited from engaging in unsupervised contact with minors. Resp't Ex. 6 at 4. While such evidence does not directly affect the Court's consideration of Mr. Springer's own volitional control, it does inform the Court's decision insofar as it tends to show that upon his release from custody Mr. Springer will have a system of checks in place that may reinforce his own ability to control his sexual impulses.

Finally, the Court credits the testimony of Dr. Plaud, who opined about the difference between sex offenders who have made illegal and immoral choices and those who are compulsively driven to commit sexually violent acts or child molestation, noting that in his opinion the Adam Walsh Act is concerned with civilly committing only the latter. The Court finds that the evidence before it supports a finding that Mr. Springer is of the former; he has committed sex offenses in the past, but the government has not demonstrated by clear and convincing evidence that he has an inability to control his behavior such that he would satisfy these criteria for civil commitment.

> [I]n cases where lack of control is at issue, the 'inability to control behavior' will not be demonstrable with mathematical precision. It is enough to say that there must be proof of serious difficulty in controlling behavior. And this, when viewed in light of such features of the case as the nature of the psychiatric diagnosis, and the severity of the mental abnormality itself, must be sufficient to distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case.

*Kansas v. Crane*, 534 U.S. 407, 413 (2002).

9

Accordingly, though it finds that the government has met its burden at step one, and even if it assumes, *arguendo*, that the government has met its burden at step two of the inquiry, the Court finds that the government has failed to show by clear and convincing evidence that Mr. Springer would have serious difficulty in refraining from sexually violent conduct or child molestation if released. The government has not satisfied its burden, therefore, to show that Mr. Springer is sexually dangerous to others as defined by the Adam Walsh Act.

## CONCLUSION

Accordingly, for the reasons discussed above, the Clerk is DIRECTED to enter judgment in favor of the respondent Frederick Springer and against the petitioner. The government is ORDERED to release respondent to the custody of the appropriate United States Probation Office.

Respondent's preservation motion to dismiss [DE 29] is DENIED insofar as it is inconsistent with the Fourth Circuit's holding in *United States v. Timms*, 664 F.3d 436 (4th Cir. 2012). The government's motion to dismiss respondent's motion to dismiss [DE 34] is DENIED AS MOOT. This action is hereby DISMISSED.

SO ORDERED, this __7__ day of September, 2012.

*[signature]*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE